**Ethel L. HARDIN, Petitioner–Appellant,**

v.

**Gary BLACK, Warden,
Respondent–Appellee.**

No. 87–8118.

United States Court of Appeals,
Eleventh Circuit.

May 23, 1988.

---

6. For the complete text of the amended § 235(a)(1), see the note following 18 U.S.C.A. § 3551.

Andrew J. Ekonomou, Kirby Atkinson, Atlanta, Ga., for petitioner-appellant.

Mary Beth Westmoreland, State Law Dept., Atlanta, Ga., for respondent-appellee.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and HAND *, Chief District Judge.

HAND, Chief District Judge:

Petitioner Ethel L. Hardin, a Georgia inmate, appeals the district court's denial

---

* Honorable William Brevard Hand, Chief U.S. District Judge for the Southern District of Alabama, sitting by designation.

of her habeas petition. The district court found a state procedural default as to seventeen claims presented in the petition and concluded that the remaining four claims were without merit. We affirm in part and reverse in part.

## I. FACTS

On April 23, 1983, Hardin was convicted in the Superior Court of Douglas County, Georgia of murder in connection with the shooting death of her husband, Thomas Hardin, by her son, Robert Earl Davies, Jr. (Bobby Davies, Jr.)[1] She was sentenced on that day to life imprisonment. The conviction and sentence were affirmed on direct appeal. *Hardin v. State*, 252 Ga. 99, 311 S.E.2d 462 (1984).[2] A motion for rehearing was denied on February 15, 1984.

Subsequently, Hardin filed a petition for writ of habeas corpus in the Superior Court of Baldwin County, Georgia.[3] Following an evidentiary hearing on January 22, 1985, the Superior Court granted habeas relief and ordered that Hardin be given a new trial. The Superior Court granted relief on nine grounds: (1) the trial court improperly refused to conduct an *in camera* inspection of the letter written by Bobby Davies, Jr.; (2) the trial court improperly refused to allow a psychiatric examination of Bobby Davies, Jr.; (3) the trial court improperly allowed Sheriff Lee to testify about the

high percentage of crimes solved in Douglas County; (4) the trial court improperly allowed petitioner's character to be placed into issue; (5) the trial court improperly allowed statements made by a co-conspirator to be admitted into evidence; (6) the trial court improperly allowed the petitioner to be prosecuted for conspiracy but convicted for murder; (7) the charge of the trial court was improper; (8) the prosecutor's closing argument was improper; and (9) the trial court exceeded its jurisdiction by not providing a verdict form for conspiracy.

The State appealed the order of the Superior Court granting habeas relief to the Georgia Supreme Court which reversed the decision on November 27, 1985. *Black v. Hardin*, 255 Ga. 239, 336 S.E.2d 754 (1985). The Georgia Supreme Court specifically construed the 1982 amendment to the state habeas corpus statute, O.C.G.A. § 9–14–42, which became effective on January 1, 1983, three months prior to Hardin's conviction, and stated that "a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus." 336 S.E.2d at 755 (emphasis in original). Based upon such construction of the amended state habeas statute, the Georgia Supreme Court held that:

---

1. Hardin's son, Robert Earl Davies, Jr., entered a guilty plea to the murder of his stepfather and thereafter was the key state witness against his mother. At trial, he testified that he shot his stepfather "because it was what ma wanted." *Hardin v. State*, 252 Ga. 99, 311 S.E.2d 462, 463 (1984); *Black v. Hardin*, 255 Ga. 239, 336 S.E.2d 754 (1985).

2. On appeal, Hardin alleged that the trial court erred in: (1) refusing to order the prosecution to disclose critical evidence; (2) denying her request for witnesses' statements after they testified; (3) failing to require the disclosure of tape recordings of her statements; (4) failing to require disclosure of documents used to refresh the recollection of witnesses; (5) denying the motion for a directed verdict as the accomplice's testimony was not adequately corroborated; and (6) refusing to hear a recusal motion.

3. In her state habeas petition, Hardin raised fourteen claims: (1) documents used to refresh the recollection of witnesses were withheld

from the defense; (2) insufficient evidence to corroborate the testimony of an accomplice; (3) statements of witnesses and surveillance tapes were improperly withheld from the defense; (4) trial court refused to conduct an *in camera* inspection of a personal letter of a witness; (5) originals of tape recordings were not produced to the defense; (6) trial court refused to compel a psychiatric examination of a state's witness regarding competency; (7) trial court improperly allowed hearsay statements into evidence; (8) trial court improperly allowed Sheriff of Douglas County to testify regarding percentage of crimes solved; (9) trial court improperly allowed defendant's character to be placed into issue at trial; (10) the indictment did not inform defendant of the charges for which she was to be tried; (11) a search warrant was not based on probable cause; (12) the charge of the trial court was confusing or improper in several different aspects; (13) trial court passed sentence without giving the jury an opportunity to render a verdict regarding conspiracy; and (14) the argument of the district attorney was improper.

Many of the errors Hardin urged on habeas corpus were not of constitution dimension, and were therefore beyond the purview of the writ. As to her constitutional claims the record is silent as to a "showing of adequate cause for failure to object or to pursue on appeal *and* a showing of actual prejudice to the accused." The record reflects no miscarriage of justice. Accordingly, Hardin's petition is beyond the scope of the writ of habeas corpus.

336 S.E.2d at 755 (emphasis in original).

On January 9, 1986, Hardin filed the instant petition for habeas corpus relief in the district court below setting forth 23 claims which were summarized by the United States Magistrate to whom the petition was referred as follows:[4]

1. Her Sixth Amendment right of confrontation was denied when documents used to refresh Bobby Davies, Jr.'s recollection were withheld from counsel, limiting his ability to cross-examine.

2. The evidence was insufficient to support the verdict, because much hearsay was improperly admitted, the testimony of an alleged accomplice was not corroborated, and petitioner was not identified as a participant in the criminal act.

3. Her Sixth Amendment right of confrontation was denied because the government did not supply witness statements of Bobby Davies, Jr. and Randy Wilson to counsel and withheld pre-arrest surveillance tape transcripts and documents prepared by Sheriff Lee and used to refresh his recollection.

4. The trial court erred in failing to conduct an *in camera* inspection of a letter written by Bobby Davies, Jr., describing the events leading up to the murder.

5. Her right to due process was denied because the state refused to produce pre-arrest surveillance tapes and post-arrest tape recordings of conversations between the petitioner and witnesses for scientific evaluation.

6. The trial court erred in refusing to allow an independent psychiatric evaluation of a key state witness, Bobby Davies, Jr., concerning his abuse of illegal drugs and the resulting effect on his competency to testify.

7. The trial court erred in admitting hearsay evidence.

8. Her right to due process was denied when Sheriff Lee testified concerning his office's high success rate in solving homicides.

9. The state improperly placed her character in issue by questioning her regarding marijuana use.

10. The indictment failed to inform petitioner of the nature and cause of the charge against her.

11. Her right to be free from unreasonable searches and seizures was denied because certain tape recordings and physical evidence were obtained pursuant to a void search warrant.

12. The trial court's charge to the jury was confusing, erroneous, and likely to mislead the jury.

13. The trial court erred in charging the jury that "slight evidence that the defendant was a party to the crime will corroborate the accomplishment and warrant conviction."

14. The trial court erred in charging the jury that it was authorized to "use the testimony of one accomplice to corroborate the testimony of another accomplice" as the evidence at trial did not support the state's theory of the case: conspiracy to commit murder.

15. The trial court erred in charging the jury as follows: "The state contends that the defendant committed the offense charged in this special presentment (murder) when she together with one or more persons, conspired to commit the offense for which she is on trial (murder) ..." without providing the jury an opportunity to return a verdict as to conspiracy, because there was evidence of only one co-conspirator.

---

**4.** The Magistrate's summary and delineation of Hardin's claims are uncontested. No objection to the Magistrate's recommendation was filed.

16. The trial court erred by passing sentence on the petitioner without giving the jury the opportunity to return a verdict with regard to conspiracy to commit murder.

17. The trial court erred in charging the jury as follows: "A person entering into a conspiracy already formed is a party to all the acts done by the other co-conspirators before or afterwards in the prosecution of the criminal enterprise" as neither the indictment nor the evidence referred to more than one co-conspirator.

18. The trial court erred in charging the jury with regard to incriminating admissions and incriminating statements.

19. The prosecutor's closing argument was improper in that it referred to the success of the sheriff's department in investigating homicides.

20. The indictment and evidence contained a material and fatal variance because the indictment charged the petitioner with malice murder but the state attempted to prove conspiracy to commit murder.

21. The trial court erred in charging the jury as follows: "Presence, companionship, and conduct before and after the commission of the alleged offense may be considered by the jury and any circumstances which may give rise to an inference to the existence of a conspiracy . . ."

22. The trial court erred in giving the jury a burden-shifting instruction as follows: "I charge you that every person is presumed to be of sound mind and discretion, but this presumption may be rebutted. Now I charge you that you may infer that the acts of a person of sound mind and discretion are the products of his or her will; and you may infer that a person of sound mind and discretion intends the natural and probable consequences of his or her act."

23. The Supreme Court of Georgia erred in reversing the decision of the state court granting habeas corpus relief by unconstitutionally applying the provisions of O.C.G.A. § 9–14–42(a) and § 9–14–48(d) because this construction has the effect of suspending the writ of habeas corpus.

(Magistrate's Recommendation at pp. 1–4). The Magistrate did not construe nor treat ground 23 as an individual claim for relief, finding instead that it merely challenged the Georgia Supreme Court's reversal of the state habeas court by application of a procedural bar. The Magistrate further noted, however, that:

> The 1982 amendment [to the state habeas statute, O.C.G.A. § 9–14–42(a) and § 9–14–48(d) became effective on April 13, 1982 but applied to habeas petitions filed after January 1, 1983. . . . Hardin was tried and sentenced to life on April 23, 1983. Her conviction was affirmed on direct appeal on January 31, 1984 and she filed her writ of habeas corpus December 5, 1984. The amendment thus had been in effect for a year before petitioner was tried. While the statute had not been construed by the Supreme Court of Georgia within that time, the language of the statute is clear and petitioner's argument fails to establish cause for non-compliance.

(Magistrate's Recommendation at p. 13). Hardin has not challenged the Magistrate's finding and conclusion on this issue. The Magistrate also concluded that seventeen of the claims urged by Hardin were procedurally barred in that she had failed to pursue the issues by way of objections at trial or on appeal and that she had failed to show cause sufficient to excuse her default. The Magistrate did address the following claims on the merits but found no basis on which to grant habeas relief: (1) the failure to conduct an *in camera* inspection of a letter written by Bobby Davies, Jr. (ground 4); (2) the failure to produce witness statements, tape recordings and documents used to refresh the recollection of certain witnesses (grounds 1 and 3); (3) insufficient evidence to corroborate accomplice's testimony (ground 2); and (4) the failure to produce certain tape recordings for examination by an expert of the appellant's choosing (ground 5). Hardin filed no objection in the district court to the Magistrate's recommendation. The district court adopted the Magistrate's Recommendation

on January 28, 1987 and ordered that Hardin's petition be denied. On February 13, 1987, Hardin timely filed her notice of appeal challenging the denial of her petition.

## II. ISSUES

On appeal, Hardin first contends that the district court erred in finding that seventeen claims asserted as grounds for habeas corpus relief were procedurally barred under Georgia law thus precluding the district court from considering those claims since Hardin failed to show cause for her procedural default. Hardin then challenges the district court's decision relative to certain claims which were addressed on the merits.[5] Specifically, Hardin argues that the district court erred in concluding that: (1) the failure of the prosecution to provide Hardin with certain pre-arrest surveillance tape recordings and transcripts, documents used to refresh the recollection of witnesses, statements of witnesses and certain post-arrest recordings was not error and did not constitute a basis for federal habeas corpus relief; (2) it was harmless error for the trial court to refuse to conduct an *in camera* inspection of a letter written by her son, Robert Earl Davies, Jr.; and (3) Hardin's trial was not rendered fundamentally unfair by the state's refusal to provide her with certain pre-arrest surveillance tape recordings and post-arrest tape recordings so that an independent scientific examination could be made by an expert of her choosing.

## III. ANALYSIS

### A. *Procedural Bar*

The district court concluded that it was precluded from reviewing seventeen claims asserted by Hardin because of her failure to comply with the Georgia procedural default rules which require a timely objection

to the alleged error in the trial or the pursuance of the same on direct appeal. Of these seventeen claims, the state had asserted to the district court a procedural bar only as to thirteen (grounds 8, 9, 10, 12, 14, 15, 16, 17, 18, 19, 20, 21 and 22).[6] The district court concluded, however, that an additional four claims raised by Hardin in her federal habeas petition (grounds 6, 7, 11 and 13) were procedurally barred under the reasoning of the Georgia Supreme Court in *Black v. Hardin, supra.*

Hardin argues that in her case the Georgia Supreme Court ruled on the merits of certain of her state habeas claims and that, therefore, the state waived its procedural default rule as to those claims. Hardin further argues that since the Georgia Supreme Court failed to delineate which claims were without merit and which claims were procedurally barred, she was entitled to federal review of all of her claims. We must agree that, under the particular circumstances of this case, the procedural default rule of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed. 2d 594 (1977), should not have been applied by the district court to the seventeen claims referred to above.

 It is abundantly clear that the *Sykes'* procedural default rule does not preclude federal habeas review of a petitioner's constitutional claims if the state court declines to apply a procedural bar and adjudicates the federal claims on the merits. *Oliver v. Wainwright*, 795 F.2d 1524 (11th Cir.1986); *Spencer v. Kemp*, 781 F.2d 1458 (11th Cir.1986); *Smith v. Wainwright*, 777 F.2d 609 (11th Cir.1985); *Dobbert v. Strickland*, 718 F.2d 1518 (11th Cir.1983); *Thompson v. Estelle*, 642 F.2d 996 (5th Cir. Unit A 1981). Where, however, the state court both applies a procedural bar and

---

5. The district court's decision on the merits relative to Hardin's claim that the evidence was insufficient to corroborate the testimony of her accomplice, Robert Earl Davies, Jr., has not been challenged on appeal.

6. It is interesting to note that the state did not assert a procedural bar as to the majority of these thirteen claims in its brief to the state habeas courts but, instead, argued only the merits of these claims. It is therefore apparent that,

had this been a case in which the state habeas court reached a decision without opinion, the federal court would have been required to reach the merits of those claims briefed by the state's attorney to the state court only on the merits. *See, Campbell v. Wainwright*, 738 F.2d 1573, 1578 (11th Cir.1984), adopting the reasoning of *Martinez v. Harris*, 675 F.2d 51 (2d Cir.), *cert denied*, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982).

addresses the claims on the merits, federal habeas review is precluded only if the state court's adjudication on the merits is made in the alternative and does not constitute the principal basis for the state court's denial of relief on collateral challenge of the conviction. *Smith v. Wainwright,* 777 F.2d 609, 614 (11th Cir.1985); *Hall v. Wainwright,* 733 F.2d 766, 777–78 (11th Cir.1984). In the event that the federal court cannot discern on which basis the state court relied to deny collateral relief— whether because the claims were considered foreclosed by procedural default or because they were considered to lack merit—the federal court must address the claims on the merits. *Campbell v. Wainwright,* 738 F.2d 1573, 1577 (11th Cir.1984).

In this case, the state concedes that the Georgia Supreme Court found all the claims presented by Hardin to the state habeas court to be *either* not cognizable in the state habeas proceeding because they did not state a constitutional claim [7] *or* procedurally barred from review because Hardin failed to object either at trial or on direct appeal. The state never actually addresses the issue of the Georgia Supreme Court's failure to delineate which of Hardin's claims failed to reach constitutional dimension and which reached constitutional dimension but were procedurally barred. Rather, the state argues that the two findings are indistinguishable and that neither equates with an adjudication of the claims on their merits.

■ We cannot accept the state's proposition that a determination of whether a particular claim is of constitutional dimension is equivalent to a state court's invocation of and reliance upon its procedural default rules. The issue of whether a claim is of constitutional dimension involves an analysis different in kind than that required to determine whether an objection to a particular error or deficiency was raised at trial or on appeal and thereby preserved for purposes of collateral review. The rule of *Wainwright v. Sykes* does not

apply to claims upon which the state court has denied collateral relief for reasons other than petitioner's failure to comply with state procedural rules. To hold otherwise here would contravene the Supreme Court's explicit admonition that a federal habeas court make its own independent determination of federal claims unless, and only unless, the state court determines that petitioner has waived such claim by failing to properly present it to the state's trial and appellate courts and the petitioner fails to show cause and prejudice in relation to his procedural default. *Wainwright,* 433 U.S. at 87, 97 S.Ct. at 2506. The Supreme Court did not, in *Wainwright v. Sykes,* preclude federal review of any state court decision declaring that a claim of error or deficiency at trial failed to reach federal constitutional dimension.

■ In this case, therefore, the district court should have reviewed the seventeen claims in question on the merits. Consequently, we must reverse the decision below to the extent that the district court found itself precluded from reviewing these claims. We could possibly examine each claim and remand for consideration on the merits only those claims which rise to a constitutional level. Some of the claims clearly do not. The case, however, has not been properly presented on appeal for us to make that determination. In any event, it is better for this to be done in the first instance by the district court. We remand the cause for reconsideration of these claims and such further proceedings as are deemed necessary by the district court below to this end.

### B. *Failure to Provide Certain Evidence*

In Hardin's first and third grounds for federal habeas relief, she claimed that she was denied due process of law as guaranteed by the Fourteenth Amendment of the Constitution and the right of confrontation and effective assistance of counsel as guar-

---

7. The Georgia Supreme Court relied upon the 1982 amendment to the Georgia habeas corpus statute which limited challenges to those involving a substantial denial of rights under either the federal or the state constitution. *Black v. Hardin,* 255 Ga. 239, 336 S.E.2d 754 (1985), citing O.C.G.A. § 9–14–42(a); *Parker v. Abernathy,* 253 Ga. 673, 324 S.E.2d 191 (1985).

anteed by the Sixth Amendment because of the state's failure to provide documents used to refresh the recollection of state witnesses and copies of certain statements of witnesses, pre-arrest surveillance tapes and transcripts of these tapes. Specifically, these two grounds for relief refer to the state's refusal to allow Hardin access to a letter written by her son, Bobby Davies, Jr., to his natural father and the state's failure to provide copies of tapes and transcripts. The district court below considered these claims on the merits and concluded that no Sixth Amendment violation occurred as Hardin was not denied the right to conduct a thorough and sifting cross-examination of the state's witnesses.

■ Hardin initially argues on appeal that the district court erred in reviewing the evidentiary ruling by which she was denied the above evidence solely under a Sixth Amendment analysis without considering her due process argument. Hardin's due process argument, however, is founded solely upon an alleged violation of the Sixth Amendment Confrontation Clause. This is so because, while Hardin in general contends that she was denied a fair trial and effective assistance of counsel, these general contentions are solely predicated upon her specific contention that the state's refusal to produce the requested information impacted on her ability to confront and cross-examine the state's witnesses. It is to this issue, Hardin's ability to confront and cross-examine the state's witnesses as guaranteed by the Sixth Amendment, that the district court properly addressed itself and specifically found that an effective cross-examination was conducted by Hardin's counsel. We affirm.

Hardin does not in any specific manner challenge on appeal the district court's findings regarding her counsel's thorough and effective cross-examination of the state's witnesses. Hardin apparently recognizes that, having failed to file written objections to the Magistrate's proposed findings, she is barred from attacking on

appeal those findings thereafter adopted by the district court "except upon grounds of plain error or manifest injustice." *United States v. Slay,* 714 F.2d 1093, 1095 (11th Cir.1983); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc). The district court's findings on this point, however, are not erroneous and no manifest injustice has been demonstrated. Hardin concedes that she was allowed access, albeit not in the form she desired, to all the tape recordings and documents requested except the letter written by her son, Bobby Davies, Jr.[8] The letter, therefore, constitutes the only item of evidence that might be said to have been suppressed by the state or excluded by the trial court.

■ Hardin does correctly state the principles which are applicable to suppressed or excluded evidence. It was indeed established in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) that "the suppression by the prosecution of *evidence favorable to an accused* upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1197 (emphasis added). It has also been held that evidence favorable to an accused includes impeachment evidence as well as exculpatory evidence. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). In *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court not only established a test for materiality, but made clear that "the prosecution is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." 473 U.S. at 675, 105 S.Ct. at 3380. *See also, United States v. Burroughs,* 830 F.2d 1574 (11th Cir.1987).

We have, at Hardin's entreaty, closely examined the letter in question, together with the testimony of its author at trial.

---

8. With respect to the evidence which she undisputedly examined prior to trial, Hardin seeks to have this Court declare, on constitutional grounds, that mere access to the state's evidence

is insufficient and that copies of such evidence must in all cases be provided to the defense. We decline to adopt such an unprecedented proposition.

We find that the district court did not err in concluding that the letter contained nothing of an exculpatory or impeaching nature. Neither did the district court err in finding that the author's "testimony at trial closely tracks the information divulged in the letter." (Magistrate's Recommendation at p. 15–16). It is evident from the record that the denial of access to the letter did not restrict the scope of Hardin's cross-examination of its author. Hardin's speculation to the contrary is unfounded. It is apparent, therefore, that the state was under no obligation to make the letter accessible to the defense and that the trial court's refusal to order otherwise did not deprive Hardin of a fair trial. Consequently, we affirm this aspect of the district court's opinion.

### C. *In Camera Inspection*

■ The district court concluded that it was error for the trial court to refuse to conduct an *in camera* inspection of the letter written by Hardin's son, but that the error was harmless because the letter contained no *Brady* or *Giglio* information. Hardin's argument on appeal with respect to this harmless error ruling is, as above, predicated on the assumption that the letter contains information of an impeaching nature. As we have made clear above, the letter contains no such information. It cannot be said, therefore, that "had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." *Bagley, supra,* 473 U.S. at 683, 105 S.Ct. at 3384; *Burroughs, supra,* at 1578. Consequently, we affirm this portion of the district court's opinion.

### D. *Failure to Provide Tapes for Scientific Examination*

The remaining issue before this Court involves Hardin's claim that her trial was rendered fundamentally unfair by the state's refusal to provide her with the originals of certain pre-arrest surveillance tape recordings and a post-arrest tape recording for independent scientific examination by an expert of her choosing. The post-arrest tape in question was a recording of Hardin's statement made by Sheriff Earl Lee when he arrested Hardin in her home. Hardin's due process and Sixth Amendment claim in this instance centers upon the poor quality of the pre-arrest surveillance tape recordings and the pauses and intervals contained in the post-arrest recording of Hardin's statement. Hardin essentially argues that the tape recordings were critical evidence subject to varying expert opinion because (1) an expert may have been able to transcribe and enhance the pre-arrest surveillance tapes in order to make them easily heard and understood and (2) an expert may have been able to confirm that the post-arrest tape contained a substantial number of unexplained gaps.

■ Initially, we find no merit in Hardin's contention that an expert may have confirmed the existence of unexplained gaps in the post-arrest tape recording of Hardin's own statement. The district court specifically found that Sheriff Lee explained any gaps existing in the tape when he "testified that he did stop and start the post-arrest tape while gathering his thoughts or something else was occurring." (Magistrate's Recommendation at p. 24). Hardin did not file a written objection to this finding prior to its adoption by the district court and, therefore, cannot attack the finding on appeal absent a showing of plain error or manifest injustice. *Slay, supra,* 714 F.2d at 1095. The district court's finding on this point, however, is not erroneous and no manifest injustice has been demonstrated. Hardin does not contend, nor does the record reflect, that she has ever proffered a statement she made or a comment made by Sheriff Lee during the post-arrest interview which was not recorded and thereby made a part of the post-arrest tape at issue. The post-arrest tape, therefore, is not of the nature contemplated in *Barnard v. Henderson,* 514 F.2d 744 (5th Cir.1975) when the court set forth the following standard governing scientific examination of evidence:

Fundamental fairness is violated when a criminal defendant on trial for his liberty is denied the opportunity to have an expert of his choosing, bound by appropri-

ate safeguards imposed by the court, examine a piece of critical evidence whose *nature is subject to expert opinion.* 514 F.2d at 746. (Emphasis added). Inasmuch as Hardin was undisputedly a party to the conversation, it is clearly within her own knowledge whether the tape adequately represents the conversation recorded and within her own ability to argue otherwise.

The same can be said in part of the pre-arrest surveillance tapes. While it is undisputed that the tapes were played in open court to the jury and that the quality of these tapes was poor, Hardin was a party to the conversations recorded and, as stated previously, had access to review the tapes prior to trial. The record establishes that Hardin not only had the opportunity to present her version of the recorded conversations, but in fact testified as to what she meant by certain critical statements she made during those recorded conversations. The identification of the tapes and their connection to Hardin were never challenged. The district court correctly concluded that Hardin "has not shown what an expert could possibly have told about the tapes that would make them invalid." (Magistrate's Recommendation at p. 25). Hardin has, therefore, failed to establish that the tapes were "subject to varying expert opinion." *Barnard, supra,* 514 F.2d at 746. In addition, as noted by the Supreme Court in *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), a claim of deprivation of due process associated with the denial of expert assistance cannot be predicated upon "little more than undeveloped assertions that the requested assistance would be beneficial." 472 U.S. at 324, n. 1, 105 S.Ct. at 2637 n. 1.[9] We, therefore, affirm as well this portion of the district court's opinion.

## IV. CONCLUSION

In this case, a final note is indicated. Hardin has argued, with respect to those claims addressed by the district court on the merits, that habeas relief is required because there exists no compelling state interest to be served by the state's refusal to fulfill her discovery requests. In support of this argument, Hardin relies solely upon this Court's decision in *Boykins v. Wainwright,* 737 F.2d 1539 (11th Cir.1984). *Boykins,* however, does not stand for the proposition that, absent a violation of constitutional right, the state must demonstrate either a substantial or a compelling interest to be benefited by its laws. *Cf., California v. Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 2533–34, 81 L.Ed.2d 413 (1984) (California's policy of not preserving breath samples held not to constitute a constitutional defect because the Constitution imposed only a duty on the State to preserve evidence which both possesses an exculpatory value that was apparent before the evidence was destroyed and was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.)

We AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.

**9.** The Supreme Court in *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), declined to discuss what showing might entitle a petitioner to habeas relief for the denial of expert assistance in the defense. Although we are likewise not required in this instance to determine as a matter of federal constitutional law what showing might have entitled Hardin to habeas relief, we believe that the nature of the evidence and the expert assistance sought must enter into the equation. Hardin has not only failed to raise a legitimate issue of dispute regarding the authenticity of the tapes in question, but has offered no explanation regarding the nature of the tests or procedures an expert could perform on the evidence and no assurance that the evidence would not be destroyed during the testing process. We note as well that the nature of the evidence at issue here is clearly distinguishable from the psychiatric testimony at issue in *Boykins v. Wainwright,* 737 F.2d 1539 (11th Cir.1984).