United States Court of Appeals,

Eleventh Circuit.

No. 94-3058.

Daniel Eugene REMETA, Petitioner-Appellant,

v.

Harry K. SINGLETARY, Jr., Secretary, Florida Department of Corrections, Respondent-Appellee.

May 31, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 93-148-CIV-OC-16), John H. Moore, II, Judge.

Before TJOFLAT, Chief Judge, and BIRCH and DUBINA, Circuit Judges.

BIRCH, Circuit Judge:

Daniel Eugene Remeta appeals the district court's order denying his petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254. Remeta raises numerous issues on appeal with respect to both his conviction and sentence. We conclude that Remeta's claim regarding the state's alleged violation of the Interstate Agreement on Detainers ("IAD"), Fla.Stat. § 941.45, is an issue of first impression in this circuit and therefore warrants discussion. We find all remaining claims to be without merit and affirm the district court's denial of his habeas petition for the reasons set forth in its opinion.[1]

---

[1] Shortly before the release of this opinion the Antiterrorism and Effective Death Penalty Act of 1996 (the "Act") was signed into law; the Act aims to expedite the process of federal collateral review. The Act specifically provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings

I. BACKGROUND

The facts relevant to this appeal are summarized briefly: Remeta committed a series of murders, attempted murders, and robberies in three different states during a two-week crime spree in 1985. On February 8, Remeta murdered Mehrle W. Reeder during the course of robbing a gas station in Ocala, Florida. Two days after the Florida murder, Remeta and a companion shot Camillia Carroll, a cashier at a convenience store in Texas, after robbing her at gunpoint; Carroll survived the incident and testified against Remeta at his Florida trial. On February 13, Remeta shot and killed the manager of a highway gas station in Kansas. Shortly thereafter, the car in which Remeta and several other individuals were driving was pulled over by a Kansas sheriff; one of the passengers in the car shot the sheriff twice. Remeta and his companions subsequently fled to a grain elevator, where they abducted two men after stealing their truck, made them lie face

unless the adjudication of the claim—

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Title I, Sec. 104, § 3(d)(1), (2) (1996). Our review of this case indicates that the state adjudiction of Remeta's IAD claim resulted in a decision that was neither contrary to clearly established Supreme Court precedent nor based on unreasonable factual determinations. Therefore, under the express terms of the new law, Remeta would not be entitled to habeas relief. Because we deny the petition according to pre-existing standards, however, we decline to consider either the applicability of the Act to this case or whether the Act provides a basis for the denial of relief.

down in the road, and killed them with gunshots to the back of the head. Remeta pleaded guilty to each of the three Kansas homicides, receiving two consecutive life sentences for killing the gas station manager and two consecutive life sentences for killing the grain elevator employees.

Remeta was extradited to Florida, where he was tried, convicted, and sentenced to death for the Ocala murder. On direct review, his conviction and sentence were affirmed by the Florida Supreme Court. *Remeta v. State,* 522 So.2d 825 (Fla.1988). The United States Supreme Court denied his petition for writ of certiorari. *Remeta v. Florida,* 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988). Remeta next filed both a motion for state post-conviction relief with the state circuit court pursuant to Florida Rules of Criminal Procedure 3.850 and a state habeas petition with the Florida Supreme Court. Following an evidentiary hearing, the trial court denied the Rule 3.850 motion. The Florida Supreme Court consolidated the Rule 3.850 appeal and the habeas petition, affirmed the trial court's denial of the motion for post-conviction relief, and denied the habeas petition. *Remeta v. Dugger,* 622 So.2d 452 (Fla.1993). Remeta then petitioned the federal district court for the Middle District of Florida for habeas corpus relief pursuant to 28 U.S.C. § 2254. In 1994, the district court denied the petition after finding that Remeta was either procedurally barred or not entitled to relief on the claims raised therein. The district court also granted Remeta's motion for a certificate of probable cause to appeal. This appeal followed.

## II. DISCUSSION

In reviewing a petition filed under 28 U.S.C. § 2254, we presume that the factual findings made by a state court of competent jurisdiction following a hearing on the merits are correct if evidenced by reliable and adequate indicia.[2] *Hamilton v. Ford,* 969 F.2d 1006, 1010 (11th Cir.1992), *cert. denied,* 507 U.S. 1000, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993). We review factual conclusions made by the district court under a clearly erroneous standard. *Id.* We review mixed questions of law and fact *de novo. Id.* at 1034.

### A. *Procedural Default*

We note at the outset that the appellee raises the issue of

---

[2]28 U.S.C. § 2254(d) provides, however, that a petitioner can rebut this presumption by showing that

> (1) the merits of the factual dispute were not resolved in the state court hearing;
>
> (2) the factfinding procedure employed by the state court was not adequate to afford a full and fair hearing;
>
> (3) the material facts were not adequately developed at the state court hearing;
>
> (4) the state court lacked personal or subject-matter jurisdiction;
>
> (5) the petitioner was indigent and the sate court failed to appoint counsel, in deprivation of his constitutional rights;
>
> (6) the petitioner did not receive a full, fair and adequate state hearing;
>
> (7) the petitioner was otherwise denied due process of law in the state court proceeding; or
>
> (8) the state court factual determinations are not supported by the record.

procedural default, stating that Remeta failed to present his IAD claim either at trial or on direct appeal. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In its ruling on Remeta's consolidated petition for state habeas relief and motion for Rule 3.850 post-conviction relief, the state court expressly found nine claims set forth by Remeta to be procedurally barred; the court went on to conclude that Remeta's IAD claim "[p]resent[ed] a novel argument regarding extradition; however, we find that claim to be without merit and to be inappropriately raised in a 3.850 motion." *Remeta v. Dugger,* 622 So.2d at 454.

As noted, Remeta raised the challenge to his conviction based on Florida's alleged violation of the IAD in both his state habeas petition and his Rule 3.850 motion; these separate challenges were consolidated for purposes of appellate review by the Florida Supreme Court. While we acknowledge that the state supreme court's ruling in this case is not a model of clarity, we disagree with the state's contention that the court found Remeta's claim to be procedurally defaulted or, in the alternative, lacking in merit. Rather, we resolve that the state court's decision constituted a ruling on the *merits* with respect to Remeta's state habeas petition, and a finding of possible procedural default with respect to his motion for post-conviction relief. Because the *Sykes* procedural default rule does not preclude federal habeas review of a petitioner's constitutional claim if the state court adjudicates the federal claim on the merits, *Hardin v. Black,* 845 F.2d 953, 958 (11th Cir.1988), we therefore proceed to address the underlying merits of Remeta's challenge.

B. *IAD Claim*

While imprisoned in Kansas State Penitentiary in 1985, Remeta signed a document entitled "Request for Disposition of Indictments[,] Informations or Complaints," in which he stated:

> I hereby agree that this request will operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers or other criminal charges have been lodged against me from your state. I also agree that this request shall be deemed to be my waiver of extradition with respect to any charge or proceeding contemplated hereby or included herein, and a waiver of extradition to your state to serve any sentence there imposed upon me, after completion of my term of imprisonment in this state. I also agree that this request shall constitute a consent by me to the production of my body in any court where my presence may be required in order to effectuate the purpose of the Agreement on Detainers and a further consent voluntarily to be returned to the institution in which I am now confined.

R41-4627. Florida Assistant State Attorney John Futch subsequently filed the following request for temporary custody of Remeta, pursuant to the terms of the IAD, with Herb Mashner, director of the Kansas penitentiary at which Remeta was incarcerated:

> I hereby agree that immediately after trial is completed in this jurisdiction I will return the prisoner directly to you or allow any jurisdiction you have designated to take temporary custody.

R41-4639. On the same day this request was sent, Futch informed Mashner that he would be sending "under separate cover ... an Executive Agreement stating that if Remeta should receive the death penalty for the offense here in Florida that he will not be returned to Kansas."[3] R41-4632. The record reveals that in 1988, three years after Kansas relinquished temporary custody of Remeta

---

[3]This executive agreement was not contained in the record before the district court, nor is it contained in the record on appeal.

to Florida, a Kansas Department of Corrections' ("DOC") official forwarded a letter to the Florida DOC asking that a detainer be lodged against Remeta in favor of the Kansas State Penitentiary. R41-4615. This letter explicitly reminded the Florida DOC that Kansas' release of Remeta "was under the term[s] of the Interstate Agreement on Detainers. Under this Agreement, [Florida] is obligated to return Remeta upon completion of all litigation." *Id.* Remeta remains incarcerated, and on death row, in Florida.

In this habeas corpus proceeding, Remeta contends that (1) his waiver of extradition was not knowing, intelligent and voluntary, and (2) Florida's failure to abide by the terms of the IAD—by trying him without a valid extradition waiver and by failing to return him to Kansas—either effectively divested Florida of jurisdiction to try him or rendered his conviction invalid. Remeta seeks to have his conviction set aside on this basis. Whether violation of the provisions of the IAD concerning extradition and return to a "sending state" following trial can constitute reversible error meriting habeas relief is an issue of first impression in this circuit.

The IAD is a compact entered into by forty-eight states and the United States for the purpose of disposing efficiently of outstanding criminal charges brought against prisoners incarcerated in other jurisdictions. *Hunter v. Samples,* 15 F.3d 1011, 1012 (11th Cir.1994). The central provisions of the IAD are Articles III and IV. Article III provides a procedure by which a prisoner

against whom a detainer[4] has been filed can demand a speedy disposition of the charges giving rise to the detainer. *United States v. Mauro,* 436 U.S. 340, 351, 98 S.Ct. 1834, 1842, 56 L.Ed.2d 329 (1978). If the prisoner does make such a request, the jurisdiction that filed the detainer must bring him to trial within 180 days. *Id.,* 436 U.S. at 351-53, 98 S.Ct. at 1843. The prisoner's request operates as a request for the final disposition of all untried charges underlying detainers filed against him by that state, and is deemed to be a waiver of extradition. *Id.* Under Article IV, a signatory jurisdiction that has filed a detainer may receive temporary custody of a prisoner incarcerated in another jurisdiction, and then prosecute that prisoner for outstanding charges. *Hunter,* 15 F.3d at 1012.

The district court found that Remeta actively sought the death penalty in Florida, and therefore not only knew the consequences of his waiver of extradition, but also possessed all the necessary information to object to extradition at the time Florida sought his presence for trial. Remeta argues that the district court's findings in this regard are clearly erroneous and that the fact that Remeta requested his Kansas trial attorney as counsel in the Florida proceedings demonstrates that he did not understand the import of the extradition waiver. Remeta asks, at the minimum, that we remand the case for an evidentiary hearing on

---

[4]A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent. *Stewart v. Bailey,* 7 F.3d 384, 389 (4th Cir.1993) (quoting *Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985)).

this question.

As an initial matter, although the district court provided no record citation to support its finding that Remeta was aware that he might receive the death penalty in Florida, our independent review of the record reveals that these determinations were not clearly erroneous. The record contains letters from Remeta written while incarcerated in Kansas that sustain the district court's conclusion that Remeta understood the possible consequences of being extradited. In one letter, Remeta wrote, "If I don't try for the death penalty I'll die in some prison, [t]his is why I'm trying to get extradited." R39-4357. In another letter, he stated, "I'm gonna try for the death penalty if I can." *Id.* at 4359. A psychiatrist who authored a clinical evaluation of Remeta for the Kansas DOC also remarked that Remeta "hopes that he can be transferred to one of the states where he is being sought and he can get the death penalty." R40-4594. We conclude that the district court did not err in finding that Remeta was informed of the possible consequences of being extradited and tried for murder in another state prior to signing an extradition waiver.

We need not decide, however, whether the district court properly concluded that Remeta's extradition waiver was knowing and intelligent. Even assuming that the waiver was not knowing and intelligent, the denial of Remeta's statutory right to a pre-extradition hearing would not entitle him to habeas relief. Remeta suggests that Florida's flagrant violation of the IAD effectively deprived that state of jurisdiction to try him for murder. He fails, however, to point us to any decisional or

statutory law establishing that the IAD has a jurisdictional element, nor does he provide any legal authority for the proposition that a due process violation of the sort claimed here renders a jury's verdict void on jurisdictional grounds. The IAD does dictate that a state's failure to try a prisoner within the statutory time period, prior to being returned to the "sending" state, must result in dismissal of any untried portion of the outstanding indictment. *See* Fla.Stat. § 941.45(e). However, there is no provision in the IAD dictating that failure to either obtain a knowing and intelligent waiver of extradition or provide a prisoner with a pre-transfer hearing deprives the "receiving" state of jurisdiction. To the contrary, the Supreme Court has held that:

> [D]ue process of law is satisfied when one present in court is convicted of a crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

*Frisbie v. Collins,* 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952); *see also Shack v. Attorney General of State of Pa.,* 776 F.2d 1170, 1172 (3rd Cir.1985), *cert. denied,* 475 U.S. 1030, 106 S.Ct. 1234, 89 L.Ed.2d 342 (1986) (where petitioner was not given pre-transfer hearing, court held that "the existence of a procedural defect in [petitioner's] extradition proceedings did not impair [the state's] power to try him and ... his confinement does not violate due process.")[5] We conclude that Kansas's alleged

---

[5]It is interesting to note that in *Shack,* the Third Circuit observed that although "the right to pre-transfer hearing is an important one ... [the] denial of that right by a state official is a violation of Section 1983 of the Civil Rights Act." *Id.* at 1173. The court further remarked that congressional silence

failure to obtain from Remeta a knowing and voluntary waiver of extradition coupled with its concomitant denial of a pre-transfer hearing, even if assumed to be true, did not deprive Florida of jurisdiction to try him for murder.

As stated earlier, the record is ambiguous as to whether Florida entered into a separate agreement with Kansas stipulating that Remeta would not be returned if he received the death penalty and whether such an agreement released Florida of its obligations under the IAD. We also do not know whether Kansas is currently seeking Remeta's return to serve the remainder of his sentence. Even if we were to assume that Florida has failed to honor its statutory commitment to Kansas under the IAD, however, this appears to be a matter exclusively between Florida and Kansas. The resolution of an IAD dispute between these two states (if such a dispute exists) may necessitate that Kansas seek an injunction to force Florida to abide by its agreement, return Remeta, and allow him to serve out his Kansas sentence. This is not a matter for federal habeas corpus review.

More importantly, we previously have held that IAD violations are not cognizable in habeas proceedings absent a showing that the violation prejudiced the rights of the accused by affecting or impugning the integrity of the fact-finding process. *Hunter,* 15

regarding the need for a pre-transfer hearing as a jurisdictional prerequisite to a trial in the receiving state may be "attributable to an unwillingness on [Congress's] part to flog one state for the failings of another." *Id.* Indeed, in this case it is *Kansas* that allegedly failed to provide Remeta with a pre-transfer hearing after obtaining from him an involuntary waiver; we are not persuaded that *Kansas's* alleged violation of the IAD should be found to have deprived *Florida* of jurisdiction to try Remeta.

F.3d at 1012; *see also Seymore v. State of Ala.,* 846 F.2d 1355, 1359 (11th Cir.1988) (holding that "violations of the IAD are nonfundamental defects and—absent a showing of some sort of prejudice—are uncognizable in a federal habeas proceeding."), *cert. denied,* 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 806 (1989). As discussed earlier, Remeta has neither alleged nor shown that the two IAD violations at issue in this appeal, viewed in tandem, have affected or undermined the integrity of the trial. Assuming that Remeta did not voluntarily waive extradition, the alleged failure of Kansas to provide Remeta with a pre-transfer hearing did not divest Florida of jurisdiction to try him for murder. By the same token, Florida's alleged failure to return Remeta to Kansas to serve the remainder of his Kansas sentence in accordance with the terms of the IAD is a matter between Kansas and Florida, and is not reviewable by this court in a habeas corpus proceeding. In the absence of any showing of prejudice to Remeta caused by these alleged violations of the IAD, we are compelled to affirm the district court's decision to deny habeas relief.

## III. CONCLUSION

Remeta asks that we set aside his conviction due to Florida's alleged breach of its commitments under the IAD. Remeta urges us to strip the Florida court of jurisdiction to try him for murder based on that state's allegedly flagrant and egregious violations of the statute; yet, Remeta is unable to point to either statutory or decisional law supporting such a directive. Moreover, even assuming, *arguendo,* that Florida did fail to abide by its obligations under the IAD, there is no indication from either the

records or briefs that the integrity of the trial itself was undermined.  The district court's order denying habeas corpus relief is AFFIRMED.