RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0187p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 18-1675

TREMAINE BERNARD JOHNSON,

*Defendant-Appellant.*

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:13-cr-20471-1—Mark A. Goldsmith, District Judge.

Decided and Filed: August 7, 2019

Before: MOORE, COOK, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Andrew N. Wise, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for
Appellant. Shane Cralle, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for
Appellee.

───────────────

## OPINION

───────────────

PER CURIAM. Tremaine Johnson moved to Michigan while on probation, violating the
terms of his release from a Florida prison. Florida officials issued a warrant, but federal agents
found and arrested Johnson first. When they did, they prosecuted him for a federal crime before
turning him over to Florida authorities. Johnson challenges the order of his prosecution, arguing
that the federal district court lacked jurisdiction to sentence him because federal agents pursued
him to execute a Florida warrant on Florida's behalf. But because the federal government and

Florida could prioritize between them the order of custody and service of sentence, we AFFIRM Johnson's sentence.

**I.**

By June 2013, Florida officials had lost track of parolee Tremaine Johnson and asked federal agents for help locating him. Johnson had already completed a four-year sentence for a Florida felony conviction but, because he remained on probation, he needed permission to leave the state. So when Florida officials learned that Johnson had moved to Michigan without preclearance, they issued a fugitive warrant and enlisted U.S. Marshals with the Detroit Fugitive Apprehension Team to pursue him.

The marshals tracked down and arrested Johnson at the Michigan factory where he worked. As agents escorted him out, Johnson alerted them to a firearm stowed in his car. Agents seized the gun and, hours later, charged him with felonious possession, in violation of 18 U.S.C. § 922(g)(1). A jury convicted Johnson and we affirmed his conviction but twice vacated his sentence, remanding most recently for the district court to explain the conditions of Johnson's supervised release. *United States v. Johnson*, 803 F.3d 279 (6th Cir. 2015); *United States v. Johnson*, No. 16-1102 (6th Cir. Feb. 13, 2017) (order).

On the eve of his third sentencing, Johnson filed a motion contesting the federal district court's jurisdiction to convict or sentence him. The way Johnson figured it, the federal agents pursuing him on a Florida warrant ought to have extradited him to the custody of that state first. The district court denied that motion, satisfied that the federal government properly exercised jurisdiction, given that Florida raised no objection to the government proceeding first with its case. Even had Florida objected, the court reasoned, a flaw in the sequence of prosecution would not deprive the federal court of jurisdiction to proceed. The court then reinstated Johnson's two-year supervised release term. This appeal followed.

**II.**

We review de novo the district court's jurisdiction conclusion. *United States v. Graves*, 60 F.3d 1183, 1185 (6th Cir. 1995).

As an initial matter, we must first ensure that Johnson has Article III standing to object to the federal court's jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998). We conclude that he does. Johnson fashions his challenge as a matter of "primary jurisdiction," which "refers to the determination of priority of custody and service of sentence between state and federal sovereigns." *Taylor v. Reno*, 164 F.3d 440, 444 n.1 (9th Cir. 1998). Despite its name, primary jurisdiction does not affect the district court's jurisdiction over a criminal defendant; it merely determines the order of trial, sentencing, and incarceration. *Id.* Primary jurisdiction "is a matter of comity to be resolved by the executive branches of the two sovereigns." *United States v. Collier*, 31 F. App'x 161, 162 (6th Cir. 2002) (quoting *United States v. Warren*, 610 F.2d 680, 684 (9th Cir. 1980)).

In the context of habeas corpus petitions, the Eleventh Circuit has recently followed the direction of the Supreme Court and clarified that prisoners have Article III standing to object to their incarceration by a particular sovereign. *Moody v. Holman*, 887 F.3d 1281, 1292 (11th Cir. 2018). In its reasoning, the court pointed to the important difference between a prisoner who lacks Article III standing to bring a claim and an inmate whose claim cannot afford him any relief (i.e., the petitioner has no "cause of action" under 28 U.S.C. § 2241). *Id.* at 1286 (noting that previous cases had dismissed habeas corpus cases because the petitioner lacked "standing" to object to an agreement between the federal and state governments, but concluding that "[t]he reference in our earlier cases to lack of standing is . . . best seen as shorthand for holding that the prisoners in question, as a matter of substantive law, did not have a claim that would entitle them to habeas relief"); *id.* at 1286–87 (holding that the inmate had Article III standing both to challenge Alabama's refusal to return him to federal custody and to assert that the United States never waived primary jurisdiction). The *Moody* court expressly relied upon the Supreme Court's recent caution "that federal courts 'must not confuse weakness on the merits with absence of Article III standing.'" *Id.* at 1285 (quoting *Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015)).

Similarly, in *Johnson v. Gill*, 883 F.3d 756 (9th Cir. 2018), the Ninth Circuit implicitly recognized the petitioner's Article III standing when it considered the merits of the petitioner's habeas corpus motion asserting that the state had waived its primary jurisdiction when it unintentionally transferred the petitioner to federal custody during his state sentence, thus triggering the petitioner's federal sentence. *Id.* at 768 (concluding that the state never intentionally waived its primary jurisdiction so the petitioner's federal sentence did not begin to run until after he was released from state custody). This court has also implicitly recognized a criminal defendant's Article III standing to raise the issue of a sovereign's primary jurisdiction when we considered the merits of the defendant's direct appeal in *United States v. Collier*, 31 F. App'x 161 (6th Cir. 2002). Concluding that the federal government had waived any primary jurisdiction it may have possessed, we determined that the district court both had "the jurisdiction to order the state or the federal government to remove the defendant to a facility operated by one or the other," and also had correctly denied the defendant's motion to declare that primary jurisdiction over him was federal. *Id.* at 163. Had the defendant lacked Article III standing to raise this issue to the district court simply because it related to a decision between the state and federal governments, the court's entire analysis in *Collier* would seemingly be unnecessary.

Finally, in the context of the Tenth Amendment and federalism concerns, the Supreme Court has recognized that "[i]mpermissible interference with state sovereignty is not within the enumerated powers of the National Government, and action that exceeds the National Government's enumerated powers undermines the sovereign interests of States [and that] unconstitutional action can cause concomitant injury to persons in individual cases." *Bond v. United States*, 564 U.S. 211, 225 (2011). Because the plaintiff's own constitutional rights were violated in *Bond*, she had Article III standing to pursue her claim, even though the basis of the constitutional violation was the state's own right to sovereignty.

Given this precedent, as well as the Supreme Court's recent admonitions to distinguish between issues of Article III standing and the merits of a party's claim, we conclude that Johnson has Article III standing to contest the primary jurisdiction of the federal government in his case. Indeed, while a criminal defendant or inmate may not have a substantive right to relief (i.e., he

has no right to enforce a rule of comity between sovereigns), this would limit only his ability to receive the relief he seeks—here, the invalidation of his federal conviction and sentence—rather than his ability to request that relief in the first instance.

We are aware that previous cases from some other circuits have suggested that prisoners are prohibited from contesting the order in which they are tried or sentenced. *See, e.g.*, *United States v. McCrary*, 220 F.3d 868, 870 (8th Cir. 2000) ("The exercise of jurisdiction over [the defendant] is solely a question to be determined between those two sovereignties, and is not subject to attack by the prisoner."); *Causey v. Civiletti*, 621 F.2d 691, 694 (5th Cir. 1980) ("A person who has violated the criminal statutes of both the Federal and State Governments may not complain of the order in which he is tried or punished for such offenses." (quoting *Gunton v. Squier*, 185 F.2d 470, 471 (9th Cir. 1950)); *see also Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922) ("He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it."). However, these cases do not originate from this Circuit and, as explained above, do not recognize how the use of the term "standing" has evolved in the Supreme Court. *See, e.g.*, *Ariz. State Leg.*, 135 S. Ct. at 2663. In light of this evolution, these cases are best construed as using the term "standing" as interchangeable with the term "cause of action." In other words, the claims in these cases were adjudicated on the merits; they did not dismiss the prisoner's appeal for lack of Article III standing.

Having determined that Johnson has standing, we now turn to the merits. Johnson contends that because the marshals arrested him on a Florida warrant, Florida maintained primary jurisdiction as the first sovereign to take custody. In his view, the federal government improperly claimed jurisdiction because Florida did not dismiss its fugitive warrant or relinquish its jurisdiction, thereby invalidating Johnson's federal conviction and sentence for being a felon in possession of a firearm.

Not so. Even if Florida retained its primary jurisdiction over Johnson, this would not deprive the federal district court of jurisdiction over his case. "A lack of 'primary jurisdiction' does not mean that a sovereign does not have jurisdiction over a defendant. It simply means that the sovereign lacks priority of jurisdiction for purposes of trial, sentencing and incarceration."

*Taylor*, 164 F.3d at 444 n.1; *see also Rawls v. United States*, 166 F.2d 532, 534 (10th Cir. 1948) ("[A]ssuming, without deciding, that appellant is right in his contention that Oklahoma did not consent to the exercise of the Federal jurisdiction over appellant while he was on parole and still under State jurisdiction, he can gain no advantage thereby.  Such conduct would not destroy the Federal jurisdiction so as to make its judgment void.").

**III.**

Because the district court retained jurisdiction over Smith's criminal case, we **AFFIRM** his conviction and sentence.