[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-10023

Non-Argument Calendar

_____

YUSEF MAISONET,

Plaintiff-Appellant,

*versus*

COMMISSIONER, ALABAMA DEPARTMENT OF
CORRECTIONS,
ASSOCIATE COMMISSIONER, PLANS AND PROGRAMS,
ALABAMA DEPARTMENT OF CORRECTIONS,
PASTORAL PROGRAMS SUPERVISOR, ALABAMA
DEPARTMENT OF CORRECTIONS,
WARDEN,
CHAPLAIN, ALABAMA DEPARTMENT OF CORRECTIONS,

2                    Opinion of the Court                    22-10023

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:21-cv-00059-KD-MU

_____

Before WILSON, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Yusef Maisonet is an imam who ministered to the religious needs of Dominique Ray and Nathaniel Woods, two Muslim men who were on death row in Alabama. Maisonet sought to attend these men's executions to provide them religious counsel upon their deaths. Under Alabama's execution protocols, Maisonet was prevented from being present in the execution chamber when Ray and Woods were executed. Maisonet now sues, claiming that his exclusion from the execution chamber on these two occasions violated Maisonet's own Free Exercise rights, entirely independent from the rights of Ray and Woods. He seeks a declaration that Alabama's execution protocols are unlawful, an injunction requiring state officials to let him into the execution chamber for any future executions of Muslim prisoners, and damages for his exclusion from the executions of Ray and Woods.

The district court determined that Maisonet's claims could not go forward.  We agree.  We thus affirm the district court's judgment of dismissal, albeit on partially different grounds.

## I.

Maisonet is an imam and volunteer chaplain at William C. Holman Correctional Facility in Alabama.  In this role, he provided spiritual support to Ray and Woods as they prepared for their executions.  Maisonet considers ministering to death row inmates to be an important part of his own Muslim faith.  In February 2019, Alabama executed Ray.  Maisonet sought to accompany Ray into the execution chamber to be physically present for his passing and to assist Ray in reciting the shahada immediately before his death.  But Alabama had a policy only allowing the official prison chaplain, Chris Summers, to provide religious counsel in the execution chamber.  Under this policy, Maisonet was denied the ability to be present in the execution chamber during Ray's execution.

Shortly after Ray's execution, Alabama changed its execution protocol to exclude *any* chaplain from the execution chamber.  Alabama then executed Woods under its new policy. Maisonet had also been ministering to Woods, and he sought to accompany Woods in the execution chamber.  But Alabama's new policy still prevented Maisonet from being present during the execution.  Maisonet alleges that Alabama will likely continue to exclude religious advisors from execution chambers.

Maisonet sued a variety of Alabama state officials, whom he alleges are collectively responsible for designing and implementing the policies that excluded him from the execution chamber.  He argued that the officials' actions in excluding him from Ray and Woods's executions violated the Establishment Clause and the Free Exercise Clause of the United States Constitution, and the Alabama Religious Freedom Amendment to the Alabama State Constitution.  He further argued that the existence of the policy of excluding religious advisors from the execution chamber continues to violate Maisonet's rights under these provisions.  He sought a declaration that the officials' conduct had been unlawful, an injunction ensuring that he and other volunteer religious advisors are able to be present in the execution chamber in the future, and damages.

The state officials moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted, arguing among other things that Maisonet lacked standing and that his claims were barred by qualified immunity.  The magistrate judge recommended that the case be dismissed in its entirety for lack of standing.  The district court adopted the magistrate judge's recommendation in full as its own opinion.  Maisonet appealed.

## II.

We review de novo "the district court's grant of a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction." *Georgia Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd.*

*of Registration and Elections*, 36 F.4th 1100, 1112 (11th Cir. 2022). We accept all allegations in the complaint as true and construe the facts in the light most favorable to the plaintiff. *Id.* at 1112–13. We apply the same standard of review to a 12(b)(6) motion to dismiss for failure to state a claim. *Id.*

### III.

The district court determined that Maisonet lacked standing for both his equitable and his legal claims. We agree that Maisonet lacked standing to seek declaratory and injunctive relief against the state officials. We disagree that Maisonet lacked standing to bring his two Free Exercise damages claims.[1] But with respect to those claims, we conclude that Maisonet failed to state a claim on which relief could be granted.[2] We therefore affirm the court's judgment of dismissal.

---

[1] Maisonet's appellate briefing only presents arguments about his Free Exercise Clause claims. He has therefore abandoned any challenges to the district court's resolution of his Establishment Clause and his Alabama Religious Freedom Amendment claims. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

[2] "While the district court did not reach the Defendants' 12(b)(6) motion for failure to state a claim, we may affirm the district court's dismissal on any ground found in the record." *Lord Abbett Mun. Income Fund., Inc. v. Tyson*, 671 F.3d 1203, 1207 (11th Cir. 2012) (disagreeing with the district court's subject matter jurisdiction analysis but affirming the dismissal on 12(b)(6) grounds); *see also, e.g., Green v. Jefferson Cnty. Com'n*, 563 F.3d 1243, 1245 (11th Cir. 2009) (same).

6                    Opinion of the Court                22-10023

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013) (quotation omitted). Because declaratory and injunctive relief necessarily do not redress past harm, standing for such claims requires a showing of an ongoing or future injury. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). That means that Maisonet cannot base his standing for his declaratory and injunctive relief on the officials' past conduct. Instead, Maisonet must allege either a current, ongoing injury or that a future injury is "certainly impending." *Clapper*, 568 U.S. at 401. "[A]llegations of *possible* future injury are not sufficient." *Id.* at 409 (quotation omitted).

Maisonet cannot meet these requirements. He does not allege any ongoing injury, as he is not currently being prevented from entering an execution chamber. Nor has he alleged facts that establish a certainly impending future injury. He states that he is "committed to providing religious support and guidance to the Muslims on Alabama's death row" going forward, and that this guidance will be interfered with by Alabama's continued policy of excluding religious advisors from the execution chamber. But he fails to identify a single death row inmate whom he will be unable to aid during their execution, much less a scheduled execution date or other fact to establish that his exclusion from an execution really is "certainly impending."

His appellate briefing fares no better.  Maisonet now asserts (without support) that many of Alabama's 175 death row inmates are Muslims, and he guesses that (1) Alabama will eventually execute those inmates; (2) Maisonet will have a sufficient relationship with those inmates to feel a religious obligation to be present in the execution chamber for their executions; and (3) Alabama will exclude him from the executions.  The final point in this chain seems particularly doubtful, as Alabama represents in its appellate briefing that it now allows spiritual advisors in the execution chamber after the Supreme Court's decision in *Dunn v. Smith*, 141 S. Ct. 725 (2021).  And even if the old policy still existed, Maisonet's alleged future harm would rest on a "speculative chain of possibilities" that requires "guesswork as to how independent decisionmakers will exercise their judgment" and would not establish standing.  *Clapper*, 586 U.S. at 413–414.

Maisonet's two damages claims pose an entirely different question.  No one can dispute that Maisonet suffered some sort of past injury; he wanted to access the execution chamber during Ray and Woods's executions as part of his religious practice, and he was unable to do so.  The only question is whether this is a "cognizable interest for purpose of standing."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562–63 (1992).

We think that it is.  The basic kind of injury that Maisonet experienced—namely, a burden on his religious exercise—is the kind of injury that gives rise to a Free Exercise claim.  Maisonet alleges that he "seeks to engage in a sincerely motivated religious

exercise." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 (2022).    Because Maisonet was unable to conduct his religious exercise due to the government's conduct, he has suffered an injury in fact.[3]

In finding to the contrary, the district court made two errors: First, it confused the merits of Maisonet's claim with the standing inquiry, incorrectly relying on fifty-year-old, out-of-circuit dicta for the proposition that an injury in fact cannot exist if no underlying legal right exists. *See O'Malley v. Brierley*, 477 F.2d 785, 793 (3d Cir. 1973).    But standing "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Moody v. Holman*, 887 F.3d 1281, 1285 (11th Cir. 2018) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).    For example, a "taxpayer has standing to challenge the collection of a specific tax assessment as unconstitutional," *United States v. Windsor*, 570 U.S. 744, 755 (2013) (quotation omitted), even if the tax is clearly lawful.    An individual who is unable to use her property has standing to argue that she has been subject to a taking, *see Lucas v. South Carolina*

---

[3] It is also worth noting that Maisonet is not some far-off, abstractly concerned conscientious objector to Alabama's prison procedures. *Cf. Lujan*, 504 U.S. at 565–66 (contrasting the injury felt by environmental plaintiffs who actually use an impacted area with the injury felt by far-off plaintiffs only indirectly impacted); *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972) (same). Rather, Maisonet had a five-year relationship with Ray prior to his execution and spoke with him on the day of his death, and he had at least some pre-existing relationship with Woods. And he alleges that he made a genuine effort to attend their executions.

*Coastal Council*, 505 U.S. 1003, 1012 & n.3 (1992), even if the criteria for regulatory takings have not been met. And here too, at least at the pleading stage, a burden on religious exercise creates an injury in fact, even if the burden was lawfully imposed. *Cf. Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021) ("[T]he City's actions have burdened CSS's religious exercise . . . Our task is to decide whether the burden the City has placed on the religious exercise of CSS is constitutionally permissible.").

Second, the district court conflated the injuries suffered by Maisonet with the injuries suffered by Ray and Woods. Throughout this litigation, Maisonet has made explicit that he is only litigating the State's alleged violation of his own, personal right to minister, not the rights of Ray or Woods or any future prisoner. As will soon become apparent, this framing weakens Maisonet's argument on the merits. But as a matter of standing law, Maisonet's sole focus on his own rights obviates the need for third-party standing analysis.

But the fact that Maisonet has alleged sufficient facts to establish standing to pursue his two damages claims at this stage of the litigation does not end our analysis. The court's dismissal of Maisonet's damages claims was proper for another reason: Maisonet cannot overcome qualified immunity.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982).  To receive qualified immunity, a defendant must first prove that he was acting within the scope of his discretionary authority when the relevant conduct took place.  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  Maisonet has not contested the state officials' claim that they were acting in the scope of their discretionary authority.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate."  *Id.*  In evaluating whether a plaintiff has met this burden, we examine: (1) whether the facts, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right, and (2) whether the right in question was clearly established.  *Id.*  The law "does not require a case directly on point for a right to be clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate."  *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7–8 (2021).  A plaintiff's failure to establish either prong leads to a finding of qualified immunity.  *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).  Because the parties focus on the second prong of this analysis, we do so too.

Maisonet has not come close to demonstrating that his exclusion from Ray and Woods's executions violated his rights under clearly established law.  He has not offered a single case in any jurisdiction showing that a minister has a freestanding Free Exercise right, independent of the prisoners, to enter a prison to

conduct a religious exercise.  Much less has he offered any cases demonstrating that a non-prison employee might have a freestanding right to be in an execution chamber, perhaps the most sensitive of prison contexts.

Nor is there a "broader, clearly established principle" that demonstrates that Maisonet's rights were violated.  *Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013) (quotation omitted).  Maisonet has not alleged facts that show that "a government entity has burdened his sincere religious practice pursuant to a policy that is not neutral or generally applicable." *Kennedy*, 142 S. Ct. at 2422 (quotation omitted).  And this is where Maisonet's reliance on his own rights, independent of the inmates, proves fatal.  Ray could clearly argue that he had less access to a minister at his execution as a Muslim inmate than a Christian inmate would have had.  But Maisonet does not allege that he had less ability to minister to others as a Muslim volunteer chaplain than a Christian volunteer chaplain would have had.  Instead, he alleges that all religious advisors except the official prison chaplain were excluded under the first policy, and that all religious advisors, period, were excluded under the second policy.  But under both policies, *any* volunteer chaplain—Christian, Muslim, Hindu, Atheist, or otherwise—would have been excluded from the execution chamber.  And Maisonet does not allege that the state officials treated some "comparable secular activity" more favorably by allowing other non-state officials in the execution chamber for secular purposes.  *Tandom v. Newsom*, 141 S. Ct. 1294, 1296

(2021). Maisonet's allegations suggest that both policies excluded all non-prison staff members from the execution chamber.[4]

Maisonet attempts to circumnavigate this by relying on legally and factually inapposite cases. He claims that cases such as *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) and *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017) clearly establish that Alabama's facially neutral policy violated the law because it subjectively sought to punish particular religious practices through facially neutral means. These arguments are dubious given the lack of evidence in the record that Alabama designed its policies to place a greater burden on Maisonet's religious practices than on the practices of any other non-state employees, all of whom would have been excluded from the execution chamber regardless of religion. And even if these arguments had merit, the wildly different factual contexts of these cases would place them at far "too high a level of generality" for a qualified immunity analysis. *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021).

As a final effort to overcome qualified immunity, Maisonet argues that—at least for Ray's execution—the law was clearly established by this Court's initial stay of Ray's execution on the

---

[4] This is without even accounting for states' "well established . . . compelling interest in security and order within their prisons," *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996), which would be relevant to a full merits analysis of a claim like Maisonet's.

grounds that the policy likely violated Ray's rights under the Establishment Clause. *Ray v. Comm'r, Alabama Dep't of Corr.*, 915 F.3d 689 (11th Cir. 2019), *vacated sub nom Dunn v. Ray*, 139 S. Ct. 661 (2019). It should go without saying that a single subsequently vacated stay holding that a policy likely violated one person's rights under the Establishment Clause does not clearly establish that the same policy violated another, differently situated person's rights under the Free Exercise Clause.

Maisonet has not alleged any ongoing or certainly impending future injury. And he cannot demonstrate that his past injuries violated clearly established law. The district court thus correctly determined that this lawsuit cannot move forward.

⋆    ⋆    ⋆

We modify the judgment of the district court to declare that Maisonet's Free Exercise Clause damages claims are dismissed with prejudice under Rule 12(b)(6) and **AFFIRM** the judgment as modified.